UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMANPREET KAUR SIDHU,<br><br>Petitioner,<br><br>v.<br><br>WARDEN FACILITY ADMINISTRATOR ADELANTO ICE PROCESSING CENTER et al.,<br><br>Respondents. | Case No. 5:26-cv-04311-HDV-SK<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION AND PETITION FOR WRIT OF HABEAS CORPUS [1, 2]** |

## I.    INTRODUCTION

Petitioner Harmanpreet Kaur Sidhu ("Petitioner" or "Sidhu"), a native and citizen of India, entered the United States in January 2025 "seek[ing] safety and protection."  After living in the United States for about thirteen months, she was abruptly detained on February 9, 2026 while attending a scheduled immigration appointment.

On July 31, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") and an *Ex Parte* Application for Temporary Restraining Order ("Application") requesting her immediate release from detention under the same conditions that existed before her detention on February 9, 2026.  [Dkts. 1, 2].  The Court granted the Application in part, enjoining Respondents from transferring, relocating, or removing Petitioner outside of the Central District of California, and set a briefing schedule and hearing as to whether a preliminary injunction should issue with the Application serving at the opening brief.  [Dkt. 7].  Respondents filed a Reply on August 9, 2026, opposing Petitioner's release.  Reply at 2 [Dkt. 11].  The substance of the Petition itself is effectively fully briefed.

Petitioner was previously released by DHS with conditions of supervision, and Petitioner has not violated those conditions in the intervening thirteen months.  Respondents did not provide Petitioner with a custody redetermination hearing when she was re-detained, and offering one after the fact is not enough, especially where Respondents have failed to identify any change in circumstances or reason for the re-detention.  As an increasing wave of district courts have concluded, a post-hoc bond hearing "cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid." *Mumaev v. Semaia*, No. 5:25-cv-03409-FLA-MAR, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026).[1]

---

[1] *See also Charaf v. Rios*, No. 5:26-cv-01971-MAR, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); *Morales v. U.S. Immigr. and Customs Enf't*, No. 5:26-cv-01404-DOC-MAR, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); *Osmel v. D. Marin*, No. ED-cv-26-1548-E, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); *Singh v. Janecka*, No. 5:26-cv-01414-ACCV, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026).

1

On August 10, 2026, this Court held a hearing on the Application, granted the preliminary injunction and the petition for writ of habeas corpus, and ordered Petitioner's immediate release. [Dkt. 14].  This written order memorializes the basis for that release.

## II.    BACKGROUND

Petitioner is twenty years old and arrived in the U.S. from India in January 2025 at the age of nineteen.  Declaration of Harmanpreet Kaur Sidhu ("Sidhu Decl.") ¶ 2 [Dkt. 3].  Petitioner has resided in the U.S. since that time.  After entering the U.S., Petitioner was released on an order of recognizance and placed under community supervision.  *Id.* ¶ 11.  Petitioner filed an application for asylum, which is pending.  *Id.* ¶ 22.  Her asylum application is based on fear of persecution in India because of her religion.  *Id.* ¶¶ 23–24.  She is afraid that if she is forced to return to India, she will be tortured or killed.  *Id.* ¶ 25.  During the thirteen-month period Petitioner has lived in the U.S. prior to her detention, she complied with her supervision conditions, reported to immigration authorities, appeared for scheduled appointments, and obtained employment authorization.  *Id.* ¶¶ 17–20. Petitioner has no criminal history.  *Id.* ¶ 26.

On February 9, 2026, Petitioner was detained by ICE at her regularly scheduled check-in appointment at the ICE office in San Bernardino, California.  *Id.* ¶¶ 31–32.  She was transferred to the Adelanto ICE Processing Center where she has remained ever since.  *Id.* ¶ 41.  Petitioner was provided no explanation for why she was taken back into custody.  ¶ 34.  She did not receive any pre-detention notice, nor did she receive a pre-deprivation hearing.  *Id.* ¶ 40.

On June 2, 2026, Petitioner filed a petition for writ of habeas corpus ("First Petition"). *Harmanpreet Kaur Sidhu v. Mark Bowen, et al.*, 5:26-cv-00834-SK (C.D. Cal. April 29, 2026).  The First Petition was granted.  *Id.*  Petitioner received a bond hearing before an immigration judge on April 22, 2026.  *Id.* [Dkt. 18 at 2].  The immigration judge denied Petitioner's release.  Sidhu Decl. ¶ 52.  Petitioner has remained in custody at Adelanto ICE Processing Center ("Adelanto") since her detention in February.

## III.    LEGAL STANDARD

The standard for issuing a preliminary injunction is the same as that for issuing a temporary restraining order.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

2

2001); *see also Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  To prevail on such a motion, the movant must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in her favor, and (4) a temporary restraining order is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024).  Where the non-movant is a government entity, "the third and fourth factors ... merge."  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).  In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another."  *Id*. at 684 (citation omitted).  "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success."  *Id*. (citation omitted).

**IV.    DISCUSSION**

   **A.    Likelihood of Success**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V.  It is firmly established that these protections extend to noncitizens present in the United States.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  In *Mathews v. Eldridge*, the Supreme Court outlined three factors relevant for the due process inquiry: (i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought.  424 U.S. 319, 335 (1976).[2]  As explained below, and articulated by the Court at the hearing on August 10, 2026, each of the *Mathews* factors strongly favors Petitioner's release and her entitlement to a hearing before

---

[2] The Supreme Court, the Ninth Circuit, and its sister circuits have consistently applied the *Mathews* test to non-citizens' due process challenges where the non-citizen has entered and been residing in the United States.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases).

she may be re-detained.

### 1.    Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.  Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.  *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482.  "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id*.

Here, Petitioner has lived peacefully in the community since arriving in the United States. While here, she obtained a valid Employment Authorization Document ("EAD"), category C08, from U.S. Citizenship and Immigration Services, which is valid from January 6, 2026 through July 5, 2027.  Sidhu Decl. ¶¶ 20–21.  Petitioner's prior release by an immigration judge, "constituted and 'implied promise' that [her] liberty would not be revoked unless [she] 'failed to live up to the conditions of [her] release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).   But since her arrival, Petitioner has not engaged in any violations of her conditions of supervision, nor has she engaged in any criminal activity.  Indeed, Respondents conceded at oral argument that they have no evidence to indicate otherwise.

4

Moreover, although a bond hearing was held after the first Petition, the IJ's order is completely silent on the reasons for the denial except for a rote recitation of the standard. And although the Court ordered Respondents to provide a copy of the transcript of the hearing, none was provided. This is troubling—not only because Respondents violated the Court's Order, but because providing **reasons** for a substantive legal decision is critical to an analysis of due process.

Under these circumstances, the Court concludes that Respondents have deprived Petitioner of her liberty interests by re-detaining her without a pre-deprivation hearing. *See Pinchi,* 792 F. Supp. 3d at 1032; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Morales*, 2026 WL 1026234, at *5 ("Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of parole. . . . A liberty interest, such as Petitioner's, is paramount and should be protected."); *Morrissey*, 408 U.S. at 482.

### 2.    Risk of Erroneous Deprivation

Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690. Again, however, the government has offered no evidence that Petitioner's detention would serve either purpose. Indeed, the evidence before the Court suggests the government may have difficulty establishing such a basis. Although Respondents were given ample opportunity to produce such evidence, they failed to do so. The Court finds that requiring Respondents to provide a hearing **prior** to detention minimizes the risk of future detention and therefore minimizes the risk of erroneous deprivation of liberty.

### 3.    Government Interest

More fundamentally, as to the third *Mathews* factor, there is no countervailing government interest that supports conducting a bond hearing only after Petitioner has been detained, rather than in advance thereof. In the proceedings before this Court, Respondents have articulated no legitimate interest that would support arresting Petitioner without a pre-detention hearing. Through her continued presence in the United States for thirteen months, Petitioner has demonstrated that she poses neither a danger to the community nor a flight risk. *See Jorge M.F. v. Wilkinson*, No. 21-cv-

5

01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (Petitioner's "strong family ties and "continued employment as a driller" minimized government's concern that he is a danger or flight risk).

Indeed, Respondents' nationwide policy of detaining previously-paroled immigrants without a pre-detention hearing not only flouts the law, but serves no legitimate purpose. "[W]hether or not the government's existing regulations and practices provide for pre-detention bond hearings, due process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of [her] liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi*, 792 F. Supp. 3d at 1036.

## B. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention." *Id*. at 995. Accordingly, this factor weighs strongly in favor of granting the Motion.

## C. Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public undoubtedly have a significant interest in the

enforcement of immigration laws, but that includes an interest in "upholding procedural protections against unlawful detention." *Pinchi*, 792 F. Supp. 3d at 1037 (citation omitted). Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters. After all, without due process, there is no way to tell whether the result is in fact correct.").

## V.      CONCLUSION

For the foregoing reasons, and for the reasons stated on the record at the hearing on August 10, 2026, the Court grants the preliminary injunction, and grants the petition for writ of habeas corpus for the same reasons. The Court at the hearing ordered Respondents to release Petitioner Harmanpreet Kaur Sidhu (A# 226-161-162) from custody.

In addition, Respondents are:

- Enjoined and restrained from re-detaining Petitioner without immediately providing her with a pre-deprivation bond hearing.[3]

---

[3] At any such hearing, consistent with Ninth Circuit precedent, the government will bear the burden of showing by clear and convincing evidence whether Petitioner poses a flight risk or danger to the public. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022); *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the detainee] is a danger to the community."); *id.* at 786 (reiterating that "due process requires . . . the government to prove dangerousness or risk of flight by clear and convincing evidence") (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011), *abrogated on other grounds as recognized by Rodriguez Diaz*, 53 F.4th at 1202); *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 540 F. Supp. 3d 983, 990–91 (S.D. Cal. 2021) (discussing Ninth Circuit precedent establishing the government's burden and finding the IJ's placement of the burden of proof on detainee violated the Due Process Clause); *Balwan v. Bondi*, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (surveying circuit caselaw and concluding that the government should bear the burden); *Vazquez v. Mattos*, 2026 WL 658896, at *2 (D. Nev. Mar. 9, 2026) (requiring the government to bear the burden) (citing *Singh* and *Martinez*); *Lima v. Wofford*, 2025 WL 3535009, at *4 (E.D. Cal. Dec. 10, 2025) ("The statute is silent on the burden of proof required in a bond hearing under § 1226(a). However, the Ninth Circuit has squarely ruled that due process requires that the Government bear the burden at a § 1226(a) bond hearing of justifying detention by clear and convincing evidence.") (citing *Singh*, 638 F.3d at 1203-06); *Mendoza v. Noem, et al.*, 2026 WL 683180, at *8-*9 (E.D. Cal. Mar. 11, 2026) (analyzing Ninth Circuit cases to find that the holding in *Singh* placing the burden on the government should still be followed).

- Enjoined and restrained from removing Petitioner to a third country without notice and a meaningful opportunity to respond and contest such removal.[4]

- Ordered to file a report regarding the status of compliance with the Court's Order no later than **August 14, 2026**.

Judgment shall issue separately and the case shall be closed.

Dated: August 12, 2026

_____
Hernán D. Vera
United States District Judge

---

[4] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).